IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FREDERICK C. WEST, | ) | CASE NO. 5:16-cv-00965 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| BRIGHAM SLOAN, | ) | |
| Warden,[1] | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |
| | ) | |

Petitioner Frederick West ("Petitioner" or "West"), acting *pro se*, filed this habeas corpus

action pursuant to 28 U.S.C. § 2254 ("Petition").  Doc. 1.  West challenges the constitutionality

of his convictions and sentences in *State v. West*, Case No. CR-2013-12-3439 (Summit County).

Doc. 1.  In 2014, West was convicted of aggravated robbery, illegal use or possession of drug

paraphernalia, and two repeat violent offender specifications.  Doc. 1, p. 1; Doc. 6-2, p. 11.  The

trial court sentenced West to eleven years' imprisonment for aggravated robbery and one year

imprisonment for the two repeat violent offender specifications, which were merged, to be

served consecutively.  Doc. 6-2, p. 11.  It further sentenced West to thirty days' imprisonment

for illegal use or possession of drug paraphernalia, to be served concurrently with the other

sentences, for a total of twelve years' imprisonment.  Doc. 6-2, p. 11.

---

[1] In Respondent's Return of Writ, filed July 25, 2016, Respondent states that West is incarcerated at the Lake Erie
Correctional Institution, where he is in the custody of Warden Brigham Sloan.  Doc. 6, p. 1.

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2. On July 25, 2016, Respondent filed an Answer/Return of Writ. Doc. 6. On September 12, 2016, West filed a "Reply to Respondent's Answer/Return of Writ." Doc. 7.

For the reasons set forth below, the undersigned recommends that the Court **DISMISS in part and DENY in part** West's Petition (Doc. 1) because the Petition presents claims that lack merit, are not cognizable on federal habeas review, and/or are procedurally defaulted.

## I.     Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual determinations are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Id.*; *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009). The Ninth District Ohio Court of Appeals summarized the facts underlying West's convictions as follows:

{¶ 2} Harry Gehm is the owner of a business located at 802 South Arlington Street in Akron. At approximately 4:00 p.m. on December 11, 2013, Mr. Gehm began closing down his business for the night. Each night that he did so, he parked his pickup truck outside the door to his business and left the truck running while he walked inside and set the alarm. He also left his briefcase on his front passenger's seat. On that particular day, the briefcase contained a rubber-banded stack of money to which Mr. Gehm had attached a Post–It note bearing the number "490."

{¶ 3} When Mr. Gehm returned to his truck, he discovered that his briefcase was gone. He ultimately looked around the outside of his truck and saw another person's footprints in the freshly fallen snow on the ground. He followed the footprints and soon came face to face with a man he identified as Mr. West. According to Mr. Gehm, when he demanded that Mr. West return his briefcase, Mr. West pulled out a knife, took a step towards him, and told him to leave. Mr. Gehm then retreated and used his cell phone to call 911.

{¶ 4} The police responded quickly to Mr. Gehm's call and immediately began patrolling the area. One officer found Mr. Gehm's briefcase discarded in an open trash can that was just southwest of the location where Mr. Gehm and Mr. West had been standing. Meanwhile, another officer chased down a fleeing suspect who

was later identified as Mr. West. Mr. West was handcuffed and subjected to a pat down, at which point the police discovered a knife, a crack pipe, a crack rod, and a rubber-banded stack of money bearing Mr. Gehm's Post–It note. The police brought Mr. Gehm over to Mr. West and asked him: "Is this the guy?" Mr. Gehm then positively identified Mr. West as the man who had stolen his briefcase and brandished a knife at him.

*State v. West*, No. 27485, 2015 WL 4464559, at *1 (Ohio Ct. App. July 22, 2015).

## II.    Procedural Background

### A.    State conviction

In December 2013, a Summit County Grand Jury indicted West for one count of aggravated robbery, one count of obstructing official business, and one count of illegal use or possession of drug paraphernalia.  Doc. 6-2, pp. 1-2.  West entered a plea of not guilty to all charges.  Doc. 6-2, p. 3.  In April 2014, the Grand Jury supplemented the indictment to add two repeat violent offender specifications to the aggravated robbery charge.  Doc. 6-2, pp. 4-5.  West again entered a plea of not guilty to all charges.  Doc. 6-2, p. 8.

Also in April 2014, West moved to dismiss the case on the ground that the State had violated his right to a speedy trial.  Doc. 6-2, p. 6.  The trial court denied the motion.  Doc. 6-2, p. 7.

West's jury trial commenced on June 9, 2014.  *See* Doc. 6-2, p. 10.  On June 10, 2014, the jury found West guilty of aggravated robbery and illegal use or possession of drug paraphernalia.  Doc. 6-2, p. 10.  The State dismissed the charge of obstructing official business.  Doc. 6-2, p. 10; Doc. 6-2, p. 120.  On August 5, 2014, the trial court found West guilty of the repeat violent offender specifications.  Doc. 6-2, p. 11.  It also sentenced West to eleven years' imprisonment for aggravated robbery and one year imprisonment for the repeat violent offender specifications, which it merged, to be served consecutively, and thirty days' imprisonment for

the illegal use or possession of drug paraphernalia, to be served concurrently with the other sentences, for a total of twelve years' imprisonment.  Doc. 6-2, p. 11.

**B.      Direct appeal**

West, through new counsel, appealed to the Ninth District Court of Appeals.  Doc. 6-2, p. 13.  He raised the following assignments of error:

1. Frederick West was denied his rights to a speedy trial pursuant to the 6th and 14th Amendments to the U.S. Constitution; Article I, Section 10 of the Ohio Constitution; and the Ohio Revised Code, meriting reversal of his convictions. (April 1, 2014, Pretrial, *passim*; T., 3, 273.)

2. West's aggravated robbery conviction was not supported by sufficient evidence, which violated his rights to due process under the 14th Amendment to the U.S. Constitution and Article I, Section 16 of the Ohio Constitution, and therefore his conviction on that count and the attached repeat violent offender specification must be vacated.  (T., *passim*.)

3. West's aggravated robbery conviction was against the manifest weight of the evidence, and must be reversed.   (T., *passim*.)

4. The introduction of evidence of a suggestive and unreliable "show up" identification violated West's due process rights under the 14th Amendment, meriting reversal of his convictions.  (T. Vol. II, 186-187.)

5. During West's sentencing hearing, the trial court did not enunciate any sentence for West's misdemeanor drug paraphernalia charge, mandating reversal and a new sentencing hearing.  (Sentencing, *passim*.)

Doc. 6-2, pp. 16-17.  The State filed its appellate brief on March 20, 2015.  Doc. 6-2, pp. 68-102.

On July 22, 2015, the Ninth District Court of Appeals affirmed in part and reversed in part the judgment of the trial court.  Doc. 6-2, pp. 119-39; *West*, 2015 WL 4464559.  It found that the trial court erred by sentencing West to serve thirty days' imprisonment on the drug paraphernalia count without addressing that charge in open court, and remanded to the trial court for resentencing on that count.  Doc. 6-2, pp. 137-38; *West*, 2015 WL 4464559, at * 12.  The court affirmed the trial court's judgment in all other respects.  Doc. 6-2, p. 138; *West*, 2015 WL 4464559, at *12.

On August 24, 2015, West, acting *pro se*, filed a timely notice of appeal in the Ohio Supreme Court. Doc. 6-2, pp. 140-41. In his memorandum in support of jurisdiction, he set forth the following propositions of law:

1. Whether Appellant was denied his rights to a speedy trial pursuant to the 6th and 14th Amendments to the U.S. Constitution; Article I, Section 10 of the Ohio Constitution; and the Ohio Revised Code, meriting reversal of his convictions.

2. Whether Appellant's aggravated robbery conviction was not supported by sufficient evidence, which violated his rights to due process under the 14th Amendment to the U.S. Constitution and Article I, Section 16 of the Ohio Constitution, and therefore his conviction on that count and the attached repeat violent offender specification must be vacated.

3. Whether Appellant's aggravated robbery conviction was against the manifest weight of the evidence, and must be reversed.

4. Whether the introduction of evidence of a suggestive and unreliable "show up" identification violated Appellant's due process rights under the 14th Amendment, meriting reversal of his convictions.

Doc. 6-2, p. 143. The court declined jurisdiction of the appeal on October 28, 2015. Doc. 6-2, p. 190.

## C.     Resentencing

Pursuant to the remand from the Ninth District Court of Appeals, the trial court held a resentencing hearing on October 16, 2015. Doc. 6-2, p. 182. Upon recommendation of the prosecutor, the charge of illegal use or possession of drug paraphernalia was dismissed. Doc. 6-2, p. 182. West did not appeal.

## D.     Federal habeas corpus

On April 22, 2016, West, acting *pro se*, filed his federal habeas petition. Doc. 1. In his Petition, he asserts three grounds for relief. Doc. 1-2, pp. 3, 6, 9. Respondent filed his Return of Writ on July 25, 2016. Doc. 6. On September 12, 2016, West filed a "Reply to Respondent's Answer/Return of Writ." Doc. 7.

Each of West's grounds for relief is addressed below.

### III.    Law and Analysis

**A.  Standard of review under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). In particular, the controlling AEDPA provision states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."

*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

## B. Exhaustion and procedural default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). In order to satisfy the fair presentation requirement, a

habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.[2] *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987). Further, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies where state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his

---

[2] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law. *McMeans*, 228 F.3d at 681.

claim to the appropriate state court."[3] *Id.* Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also  Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver).   "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* at 753.  "[T]he existence of cause for a

---

[3] In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## C. Grounds for relief

### 1. Ground One should be DISMISSED and/or DENIED

**Ground One**: Whether Petitioner was denied his rights to a speedy trial pursuant to the 6th and 14th Amendments to the U.S. Constitution; Article I, Section 10 of the Ohio Constitution and the Ohio Revised Code, meriting reversal of his convictions.

Doc. 1-2, pp. 3-5.

West presented his speedy trial claim to the state courts. *See* Doc. 6–2, pp. 33–42, 148-51. The last state court to review the claim, the Ninth District Court of Appeals, held:

{¶ 8} In his first assignment of error, Mr. West argues that the trial court erred by trying him in violation of his speedy trial rights. We do not agree that a violation of Mr. West's speedy trial rights occurred.

{¶ 9} "The right of an accused to a speedy trial is recognized by the Constitutions of both the United States and the state of Ohio." *State v. Pachay*, 64 Ohio St.2d 218, 219 (1980). Ohio's speedy trial statute provides that a person charged with a felony must be brought to trial within 270 days of his arrest. R.C. 2945.71(C)(2). Yet, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). Accordingly, if a person charged with a felony remains in jail in lieu of posting bond, that person must be brought to trial within 90 days of his arrest. Id. "Time is calculated to run the day after the date of arrest." *State v. Browand*, 9th Dist. Lorain No. 06CA009053, 2007–Ohio–4342, ¶ 12.

{¶ 10} "Under certain conditions, * * * the time within which an accused must be brought to trial can be tolled." *State v. Stephens*, 9th Dist. Summit No. 26516, 2013–Ohio–2223, ¶ 7. "R.C. 2945.72 provides reasons for tolling time * * *." *State v. Fields*, 9th Dist. Wayne No. 12CA0045, 2013–Ohio–4970, ¶ 10. Relevant to this appeal, the statute provides that time may be tolled for:

(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused; [or]

\* \* \*

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion \* \* \*.

R.C. 2945.72(E), (H). "[I]f a defendant is not brought to trial within the prescribed time period, the trial court must discharge the defendant upon motion for dismissal prior to or at the commencement of trial." *Browand* at ¶ 13.

{¶ 11} Mr. West remained incarcerated from the day of his arrest through the day that his trial began. Accordingly, absent any tolling events, the State had to bring him to trial within 90 days of his arrest. *See* R.C. 2945.71(E). Mr. West was arrested on December 11, 2013, so his speedy trial time began to accrue on December 12, 2013. *See Browand* at ¶ 12.

{¶ 12} On January 3, 2014, Mr. West filed a request for discovery and, on January 9, 2014, he requested a continuance until January 23, 2014. Further, on January 23, 2014, he requested another continuance that led the trial court to set the matter for a pretrial on February 13, 2014. All three of Mr. West's requests tolled his speedy trial time. *See* R.C. 2945.72(E), (H). *See also State v. Miller*, 9th Dist. Lorain Nos. 10CA009922 & 10CA009915, 2012–Ohio–1263, ¶ 10 (time tolled for discovery request); *State v. Stevens*, 9th Dist. Lorain No. 11CA009995, 2012–Ohio–4095, ¶ 9 (time tolled "as various pretrials were continued or set at [the defendant's] request"). Thus, Mr. West's speedy trial time ran from December 12, 2013, until January 3, 2014, before tolling as a result of the foregoing events. During that period of time, a total of 23 days accrued for purposes of his statutory speedy trial rights.

{¶ 13} At the February 13, 2014 pretrial, Mr. West requested another continuance so that he might consider the State's plea offer. The parties agreed to set the matter for a pretrial on March 27, 2014, and selected an April 14, 2014 trial date. The record does not contain a transcript of any proceedings that occurred on March 27th, but does contain a transcript from a pretrial that took place on April 1, 2014.1 At the April 1st pretrial, the parties discussed Mr. West's speedy trial rights with the court, and the court determined that the April 14, 2014 trial date did not fall outside of the speedy trial deadline. The court noted, however, that it had several cases scheduled for trial that day, including a murder case that predated Mr. West's case. The court notified Mr. West that, if the murder case failed to resolve, it would take priority and the court would have no choice but to continue Mr. West's trial to the next available date.

{¶ 14} On April 14, 2014, the parties came before the court for the scheduled trial. The court informed Mr. West that it would have to continue his trial because the older murder case that the court had scheduled for trial that same day was going

forward. Mr. West filed a motion to dismiss on the basis of his speedy trial rights, but the court denied his motion. After reconciling the schedules of the court, the State, and defense counsel, the court determined that June 9, 2014, was the next available trial date. Accordingly, it rescheduled the trial for that day. The trial ultimately went forward as rescheduled.

{¶ 15} Mr. West does not dispute that his speedy trial time had not yet expired on April 14, 2014, his originally scheduled trial date. He also concedes that a period "of any reasonable continuance granted other than upon the accused's own motion" is a tolling event for purposes of the speedy trial statute. R.C. 2945.72(H). It is Mr. West's argument that, once the court decided sua sponte to continue his trial, it was obligated "to file its journal entry noting the continuance and the reasons for the continuance *before* April 15, 2014." (Emphasis sic.) According to Mr. West, absent further tolling events, April 15, 2014, was the last day that his trial could begin without the speedy trial deadline having expired. Because the court did not issue its journal entry regarding the continuance until April 30, 2014, Mr. West argues that his speedy trial rights were violated.

{¶ 16} We do not agree that April 15, 2014, was the last day that the trial court could have brought Mr. West to trial without violating his statutory speedy trial rights. As previously noted, by February 13, 2014, only 23 days had elapsed for purposes of Mr. West's speedy trial time. Then, at the February 13th pretrial, defense counsel requested an additional continuance for purposes of considering the State's plea offer. Specifically, Mr. West's counsel stated:

> I do request a continuance so that I can discuss this offer in a contact visit with Mr. West at the Summit County Jail and thoroughly discuss the offer and perhaps fashion a counteroffer.
>
> But in the event we cannot resolve the case at the next pretrial, I would like to get a trial date.

Defense counsel agreed to set another pretrial for March 27, 2014.

{¶ 17} Defense counsel's request for an additional continuance and to set the matter for a pretrial on March 27, 2014, further tolled Mr. West's speedy trial time. *See Stevens*, 2012–Ohio–4095, at ¶ 12, citing R.C. 2945.72(E). The record does not contain a transcript of any proceedings that took place on March 27th, but we will assume for purposes of our analysis that Mr. West's speedy trial time began to run again as of that day. On April 30, 2014, the trial court issued its journal entry rescheduling Mr. West's trial date. Between March 27, 2014, and April 30, 2014, 35 days elapsed for purposes of Mr. West's speedy trial time.

{¶ 18} "When sua sponte granting a continuance under R.C. 2945.72(H), the trial court must enter the order of continuance and the reasons therefor by journal entry prior to the expiration of the time limit prescribed in R.C. 2945.71 for bringing a

defendant to trial." *State v. Mincy*, 2 Ohio St.3d 6 (1982), syllabus. At the point that the court issued its order of continuance here, only 58 days of Mr. West's speedy trial time had elapsed. Accordingly, the court entered its order of continuance prior to the expiration of his speedy trial time, see id., and Mr. West's argument to the contrary lacks merit.

{¶ 19} The record does not support the conclusion that the court violated Mr. West's statutory speedy trial rights. A period "of any reasonable continuance granted other than upon the accused's own motion" is a tolling event for purposes of the speedy trial statute. *See* R.C. 2945.72(H). Having reviewed the record, we cannot say that it was unreasonable for the court to continue Mr. West's trial due to its crowded docket. The court rescheduled the trial for the first date that the court, the State, and defense counsel were available, and the trial went forward on that day. Accordingly, no violation of Mr. West's statutory speedy trial rights occurred. *See State v. Green*, 9th Dist. Summit No. 26323, 2012–Ohio–5648, ¶ 14.

{¶ 20} Mr. West also argues that the court violated his constitutional right to a speedy trial because the trial delay that occurred here was unreasonable. "The statutory speedy trial provisions of R.C. 2945.71 and the constitutional guarantees found in the Ohio and United States Constitutions are coextensive." *State v. Gaines*, 9th Dist. Lorain No. 00CA008298, 2004–Ohio–3407, ¶ 16. Accordingly, a defendant whose statutory speedy trial rights have not been violated may nevertheless seek a discharge on the basis that his constitutional right to a speedy trial has been violated. *See id*. In considering whether a defendant was deprived of his constitutional right to a speedy trial, a court must consider "the length of delay, reason for delay, assertion of the right, and resulting prejudice." *Id*.

{¶ 21} Mr. West was incarcerated for 180 days before his trial commenced. As set forth above, however, large periods of that delay were attributable to Mr. West. Mr. West received multiple continuances at his request and did not assert his speedy trial rights until April 2014, just two months before his trial commenced. The remainder of the delay was attributable to the trial court, and we have already determined that the delay caused by the court's scheduling difficulties was reasonable. Finally, with regard to prejudice, Mr. West has not argued that his defense was impaired by the delay. His only argument is that the amount of time he spent in jail was "itself oppressive and prejudicial." When balancing the factors outlined above in light of the circumstances, however, we cannot conclude that Mr. West was denied his constitutional right to a speedy trial. *See id*. at ¶ 17–20. As such, Mr. West's first assignment of error is overruled.

*West*, 2015 WL 4464559, at *1-5.

To the extent that Ground One is premised upon an alleged violation of Ohio's speedy trial statute, Ohio Rev. Code § 2945.71,[4] West fails to raise a cognizable claim for federal habeas relief. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); s*ee also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

To the extent that Ground One is premised upon an alleged violation of the Sixth Amendment right to a speedy trial, as discussed more fully below, West is unable to demonstrate that the state court's determination regarding his speedy trial claim was contrary to, or an unreasonable application of, clearly established federal law.

The Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees a defendant a "speedy and public trial." U.S. Const. Amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515–516 (1972). The Supreme Court in *Barker* refused to establish a set number of days constituting a violation of the speedy trial right, stating that "such a result would require the Court to engage in legislative or rulemaking activity, rather than in the adjudicative process to which it should confine its efforts." *Barker*, 407 U.S. at 523. Rather, the Supreme Court established a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has

---

[4] Ohio's speedy trial statute states that a "person against whom a charge of felony is pending ... shall be brought to trial within two hundred seventy days after his arrest." Ohio Rev. Code § 2945.71(C)(2). "For purposes of computing time ... each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." Ohio Rev. Code § 2945.71(E).

occurred based on the length of the delay between the date of indictment or arrest (whichever is earlier) and the date of trial. *Id*. at 530; *see also United States v. Marion*, 404 U.S. 307, 320–21 (1971). The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530; *see also Doggett v. United States*, 505 U.S. 647, 651 (1992).

To trigger a speedy trial analysis under the four-factor balancing test, the defendant first must demonstrate that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett*, 505 U.S. at 651–52; *Barker*, 407 U.S. at 530. "The length of the delay is a threshold requirement. If the length of the delay is not 'uncommonly long,' then judicial examination ends." *Maples v. Stegall*, 427 F.3d 1020, 1025–26 (6th Cir. 2005) (quoting *Doggett*, 505 U.S. at 652). While delays approaching one year are considered presumptively prejudicial depending on the seriousness of the charge, *Doggett*, 505 U.S. at 652, n.1; *Maples*, 427 F.3d at 1026, those of a lesser duration are not per se excessive. *See United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993) (six-and-one-half month delay not presumptively prejudicial); *see also United States v. Howard*, 218 F.3d 556, 564 (6th Cir.2000) (delay of five months not per se excessive); *Wilcher v. Rose*, 85 F.3d 630, 1996 WL 262951, at *1 (6th Cir. 1996) (unpublished), (ten-and-one-half months not presumptively prejudicial); *Hogan v. McBride*, 74 F.3d 144, 145 (7th Cir. 1996) (eight month delay between charge and trial not presumptively prejudicial).

The Sixth Circuit addressed Ohio's speedy trial statute in the context of federal habeas review in *Brown v. Bobby*, 656 F.3d 325 (6th Cir. 2011). The court held that AEDPA deference applied even though the Ohio Court of Appeals did not specifically explain it was ruling on the

petitioner's Sixth Amendment speedy trial claim. *Id* at 329. In considering the petitioner's federal habeas claim under AEDPA, the Sixth Circuit reasoned that AEDPA does not require that a state court strictly apply the relevant federal standard as long as the test applied is not contrary to, or substantially different from, the relevant Supreme Court precedent. *Id*. at 330. The Sixth Circuit recognized that Ohio courts consider the provisions in Ohio's speedy trial statute to be co-extensive with the Sixth Amendment. *Id*. Indeed, the Sixth Circuit stated that "Ohio's procedure for determining whether a speedy trial violation has occurred, by applying the 270–day limit, is not 'substantially different' from the *Barker* analysis, and can be seen as merely the state's method of applying that Supreme Court precedent in a more structured manner" *Id*. "Thus, any time an Ohio court reviews the implementation of a speedy trial statute, it is guided not just by those provisions, but also by the dictates of the Sixth Amendment whether or not it expressly applies the factors laid out in *Barker*." *Id*. at 331. After determining that the state court adjudicated the merits of the Sixth Amendment claim and that the state court's decision was not contrary to federal law, the Sixth Circuit then reviewed the state court's analysis and determined that the state court reasonably applied *Barker* when it determined that an approximate nineteen month delay in bringing the petitioner to trial did not violate the Constitution. *Id*. at 332–38.

Here, the Ohio court of appeals' decision was not contrary to federal law because its analysis under Ohio's speedy trial statute was consistent with the Sixth Amendment. *See Brown*, 656 F.3d at 330. Further, the state court's decision was not an unreasonable application of federal law. West advances the same arguments here as he did in state court, and the state court reasonably rejected them.

First, the state appellate court found that West himself requested most of the continuances, and the trial court was reasonable in continuing West's trial due to its crowded docket, all of which constituted tolling events under Ohio law. As noted above, the undersigned must defer to a state court's interpretation and application of state law.

Further, the state court reasonably concluded that the 180-day delay West experienced did not violate his constitutional right to a speedy trial when balancing the *Barker* factors of length of delay, reason for delay, assertion of the right, and resulting prejudice.

Although West did assert his speedy trial rights during the state trial court proceedings, the balance of the *Barker* factors weigh against him. As determined by the state appellate court, West was incarcerated for 180 days before his trial commenced. Such a period is not excessive or "uncommonly long." *See United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993) (six-and-one-half month delay not presumptively prejudicial); *see also United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007) (finding that an approximate nine month delay is not uncommonly long and is insufficient to warrant further consideration of the remaining *Barker* factors). Also, as indicated, West sought and received many continuances, and the trial court's continuance was reasonable. Moreover, West presents no argument as to how he was prejudiced by the delay other than his assertion that the "delay stretched petitioner's wait in jail to double the ordinary 90-day time limit of R.C. § 2945.71." Doc. 1-2, p. 5. He has neither alleged nor demonstrated that any witness became unavailable or that any other evidence was lost because of the delay. *See Barker*, 407 U.S. at 532. Furthermore, the length of delay alleged by West in this case is generally insufficient in itself to create a presumption of prejudice. *See United States v. Schreane*, 331 F.3d 548, 559 (6th Cir. 2003) (collecting cases and noting that "[w]hen prejudice has been found, the government's delay has typically been shockingly long") (citing *Doggett*,

505 U.S. at 657 (six years); *United States v. Brown*, 169 F.3d 344, 351 (6th Cir. 1999) (five and one-half years); *United States v. Graham*, 128 F.3d 372, 376 (6th Cir. 1997) (eight years)).

Based on the foregoing, the undersigned concludes that the state court's determination regarding West's speedy trial claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

Accordingly, for the reasons set forth above, the undersigned recommends that the Court **DIMISS and/or DENY** Ground One because, to the extent that West presents a state law claim, his claim is not cognizable on federal habeas review and, to the extent that West presents a federal constitutional claim in Ground One, his claim is without merit.

### 2. Ground Two should be DENIED

**Ground Two**: Whether Petitioner's aggravated robbery conviction was supported by sufficient evidence, which violated his rights to due process under the 14th Amendment, U.S. Constitution and Article I, Section 16 of the Ohio Constitution, and therefore his conviction on that count and the attached repeat violent offender specification must be vacated.

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Under this standard, deference is due the jury's determination. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The standard is not "whether the trier of fact made the *correct* guilt or innocence determination but, rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). Thus, in making a determination as to sufficiency of evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown*, 567 F.3d at

205; *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6ᵗʰ Cir. 2003). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6ᵗʰ Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6ᵗʰ Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *Snyder v. Marion Correctional Inst., Warden*, 608 Fed. Appx. 325, 327 (6ᵗʰ Cir. 2015) (indicating that, where a petitioner's "claims arise in the context of a § 2254 petition, [the court's analysis] must be refracted through yet another filter of deference") (citing *Coleman v. Johnson*, — U.S. —, 132 S. Ct. 2060, 2062, 182 L.Ed.2d 978 (2012) (per curiam) which reaffirmed that sufficiency of the evidence claims under *Jackson* "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference"). Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6ᵗʰ Cir. 2009).

Here, the Ninth District Court of Appeals, the last state court to review the claim, applied the correct standard under *Jackson*, stating:

> {¶ 22} In his second assignment of error, Mr. West argues that his aggravated robbery conviction is based on insufficient evidence. Specifically, he argues that the State failed to prove that he was still in the process of fleeing from a theft offense when he allegedly displayed, brandished, used, or threatened to use a deadly weapon. We disagree.

> {¶ 23} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

*West*, 2015 WL 4464559, at *5 (relying on *Jenks*, which followed the *Jackson* standard for review of sufficiency claims).

The state court then examined West's sufficiency claim challenging his aggravated robbery conviction, as follows:

{¶ 24} "No person, in attempting or committing a theft offense, * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person * * * and either display the weapon, brandish it, indicate that the offender possesses it, or use it * * *." R.C. 2911.01(A)(1). Whoever commits the foregoing offense is guilty of aggravated robbery. R.C. 2911.01(C).

{¶ 25} Mr. Gehm testified that he owned a business on South Arlington Street and that his business consisted of two buildings: one at 825 South Arlington and one at 802 South Arlington. At approximately 4:00 p.m. on the day in question, Mr. Gehm began closing down his business for the night. He testified that it was his habit to close down his business in the same manner each day. Specifically, he would drive his truck to 825 South Arlington, secure it, and then drive his truck to 802 South Arlington. Mr. Gehm testified that he always parked his truck facing north when he arrived at the second building so as to position his driver's side door directly next to the door of the building. He would then leave his truck running and his briefcase on the front passenger's seat while he went inside the building and set the alarm. He testified that his briefcase contained his billfold, as well as a rubber-banded stack of money. On the day in question, Mr. Gehm's stack of money had a Post–It note affixed to its corner with the figure "490" written on it.

{¶ 26} Mr. Gehm estimated that he was inside 802 South Arlington for less than one minute. When he finished securing the building, he came back outside and got into his truck. At that point, he realized that his briefcase was no longer on his front passenger's seat. Mr. Gehm looked around inside his truck, wondering if the briefcase had fallen. When he failed to find it, however, he exited the truck and walked around to the passenger's side. Mr. Gehm then saw that his passenger's side door was slightly ajar. He also saw a set of footprints on the ground. Mr. Gehm

explained that it had started snowing earlier that afternoon and approximately half an inch of snow had accumulated on the ground. Because he only observed one set of footprints in the snow other than his own, Mr. Gehm decided to follow them. He turned off the engine in his truck and began walking in the direction of the footprints.

{¶ 27}As Mr. Gehm walked south on South Arlington, he observed a lone individual about 150 feet away from him. He testified that the individual had already crossed Hunt Street when he saw him, was walking rather than running, and was wearing a dark jacket. Mr. Gehm hastened his pace as he watched the individual turn right and walk behind the southeast corner of a building located at the corner of Hunt Street and South Arlington. When Mr. Gehm reached the same corner of the building, he saw the figure turn right again at the southwest corner of the building. Mr. Gehm continued to follow until he emerged at the southwest corner of the building.

{¶ 28} When Mr. Gehm reached the corner of the building and looked to his right, he saw the individual he had followed standing between two vehicles on the southwest side of the building. Mr. Gehm described the vehicles as being parallel parked approximately three feet apart with their rear bumpers facing the wall of the building. The man he observed was standing in the space between the two vehicles next to their rear bumpers and the wall of the building. Seeking to confront the man, Mr. Gehm walked over to the parked cars and stood at their front bumpers. He testified that he could not see his briefcase anywhere, but that the man appeared to be focused on something between the rear bumper of one of the vehicles and the wall of the building. Mr. Gehm specified that the man was turned sideways and was partially bent over. Because the man did not notice that Mr. Gehm was standing there, Mr. Gehm called out to him.

{¶ 29} Mr. Gehm testified that he asked the man if he could have his briefcase back. In response, the man told Mr. Gehm: "I don't have your f* * * ing briefcase." As the man did so, he straightened and faced Mr. Gehm, such that Mr. Gehm had a clear view of his face. Mr. Gehm identified the individual as Mr. West. He testified that he demanded that Mr. West give him back his briefcase, and Mr. West again replied "I don't have your f* * *ing briefcase." When Mr. Gehm repeated himself a third time, Mr. West removed a knife from his pocket, snapped it open, took a step towards Mr. Gehm, and stated: "I don't have your f* * *ing briefcase, man. Get the f* * * out of here." Mr. Gehm then backed away and retreated until he felt it was safe to use his cell phone to call the police. Mr. Gehm estimated that approximately three to four minutes elapsed from the point in time that he initially left his truck to follow the footprints and the point in time that he confronted Mr. West. He further estimated that the police arrived within 30 seconds of his phone call.

{¶ 30} Officer Andrew Moss was the first to arrive on scene and asked Mr. Gehm to lead him back to the place where Mr. West had confronted him. Mr. West was

no longer there when they arrived, but Officer Moss observed a footprint trail in the snow. He, therefore, asked Mr. West [sic] to return to his truck and followed the footprints alone on foot. Officer Moss testified that the footprints led further west before turning south at the point where several residences were located. As he walked further south, Officer Moss discovered a briefcase and multiple items discarded in an open trash can behind the garage of one of the residences. Officer Moss observed that the briefcase appeared to have been rifled through, so he grabbed the briefcase and the loose items that he believed had come from inside it. He continued to follow the footprints towards Eva Avenue and then east back towards South Arlington. Officer Moss testified that he lost track of the footprints at South Arlington, but, by that point in time, his fellow officers were already apprehending Mr. West.

{¶ 31} Officer Douglas Matson also responded to Mr. Gehm's 911 call and arrived while Mr. Gehm was speaking with Officer Moss. After learning that the man who had threatened Mr. Gehm might still be nearby, Officer Matson began driving around the surrounding area in search of him. He drove south on South Arlington before turning west onto Eva Avenue. While driving west on Eva Avenue, Officer Matson saw a man standing near the rear of a car at one of the residences. He testified that he initially dismissed the man, but became suspicious when he drove further down the road, looked in his rearview mirror, and saw the man emerge on Eva Avenue. Officer Matson decided to speak with the man, so he executed a U-turn. As a result of the U-turn, Officer Matson briefly lost sight of the man. Once he drove farther down Eva Avenue, however, he spotted the man running across South Arlington in the direction of Forbes Avenue. Officer Matson ultimately had to stop his car and chase down the man on foot before he was able to apprehend him. Officer Matson identified the man he apprehended as Mr. West. He testified that, when he performed a pat down on Mr. West, he found a knife, a rubber-banded stack of money, a crack pipe, and a crack rod. The stack of money had Mr. Gehm's Post–It note affixed to its corner.

{¶ 32} Mr. West argues that the State failed to prove the "fleeing" element of aggravated robbery because there was no evidence that he showed Mr. Gehm a deadly weapon while he was "fleeing" from a theft offense. According to Mr. West, any theft offense that occurred had terminated by the time Mr. Gehm approached him. He argues that the theft and the brandishing of the knife constituted two separate offenses such that, at most, the State only set forth evidence of misdemeanor theft and aggravated menacing.

{¶ 33} Initially, we note that Mr. West assumes for purposes of his argument that he had already completed his theft offense when he brandished a knife at Mr. Gehm. Because he assumes his theft offense was already complete, he focuses strictly on the issue of flight. Likewise, the State only addresses the issue of flight. There is no argument before this Court that, at the time Mr. West brandished his knife, he was still in the process of committing a theft offense. Accordingly, this Court will not address that issue. We will assume for purposes of our review that the only issue

is whether Mr. West was fleeing from a theft offense at the time he brandished a knife at Mr. Gehm.

{¶ 34} "Neither 'fleeing' nor 'immediately' is defined in the Revised Code." *State v. Thomas*, 106 Ohio St.3d 133, 2005–Ohio–4106, ¶ 15. Because neither is defined, the Ohio Supreme Court has looked to the dictionary definition of both terms in applying the robbery statute. *See id. Accord In re J.H.*, 9th Dist. Summit No. 24221, 2008–Ohio–6621, ¶ 13. "To 'flee' is '[t]o run away from,' 'to try to escape,' '[t]o hasten for safety,' or '[t]o withdraw hastily.' " Thomas at ¶ 15, quoting V Oxford English Dictionary 1037 (2d Ed.1989). " 'Immediately' means '[w]ith no person, thing, or distance, intervening in time, space, order, or succession,' or '[w]ithout any delay or lapse of time.' "*Thomas* at ¶ 15, quoting VII Oxford English Dictionary at 682. "Black's Law Dictionary does not define the word 'flee.' It defines 'immediate' as '[o]ccurring without delay.'" *Thomas* at ¶ 15, quoting Black's Law Dictionary 764 (8th Ed.2004). The question of whether a defendant was "fleeing immediately" after a theft is a fact specific inquiry. *Thomas* at ¶ 16.

{¶ 35} In *State v. Thomas*, Mr. Thomas was seen leaving a store with two bags of merchandise for which he had not paid. Shortly after leaving the store, Mr. Thomas dropped the bags and continued to walk away. A security officer from the store followed him into a nearby laundry mat and told him to step outside. Mr. Thomas complied, and the two walked back to the store. At the front door of the store, however, Mr. Thomas tried to run away and struck the security guard as a result of the struggle that ensued. He was convicted of robbery on the basis that he struck the security guard while fleeing immediately after committing a theft offense. *Id.* at ¶ 2–3.

{¶ 36} The Ohio Supreme Court overturned Mr. Thomas' robbery conviction because it determined that he was not "fleeing immediately" from a theft offense when he struck the security guard. *Id.* at ¶ 16. The Supreme Court noted that Mr. Thomas was no longer actively committing a theft offense at the time that he struck the guard because he had dropped the stolen merchandise outside the store before walking away. *Id.* at ¶ 14. Moreover, the "delay or lapse of time [that had occurred] between the theft offense and the attempt to flee" showed that Mr. Thomas was no longer "fleeing immediately" from the theft offense at the time he struck the guard. *Id.* at ¶ 16. The Supreme Court noted that its decision might well have been different if the evidence had been such that Mr. Thomas struck the guard "in an attempt to flee immediately after [he] left the store, or after he dropped the stolen goods, or after being forced by [the guard] to return to the store." *Id.*

{¶ 37} This case is readily distinguishable from Thomas. Although a delay occurred between the time Mr. Gehm first noticed that his briefcase was missing and the time Mr. West brandished a knife at him, the delay was minimal. Mr. Gehm estimated that only minutes had elapsed, and there was testimony that he was able to see Mr. West walking in front of him shortly after he began to follow the footprints in the snow. More importantly, at the time that Mr. West brandished the knife at Mr.

Gehm, he had not yet discarded Mr. Gehm's briefcase or the money inside it. Officer Moss later found the briefcase in a garbage can southwest of the location where Mr. West confronted Mr. Gehm. Thus, unlike Mr. Thomas, Mr. West was still in possession of the items he had stolen when he brandished a knife at Mr. Gehm. *Compare id.* at ¶ 14.

{¶ 38} Assuming without deciding that Mr. West had already completed his theft offense at the time that he brandished a knife at Mr. Gehm, a rational trier of fact could have concluded that the State set forth sufficient evidence that Mr. West was still in the process of fleeing immediately after a theft offense when he brandished the knife. *Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. There was evidence that Mr. West had taken Mr. Gehm's briefcase only minutes before and was still in possession of the briefcase when Mr. Gehm confronted him. Mr. Gehm discovered Mr. West secreted between two parked cars on the side of a building, and Mr. West immediately straightened and became hostile toward Mr. Gehm when Mr. Gehm spoke to him. No intervening events occurred, and, viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that Mr. West was still in the process of fleeing from the theft he had committed when he brandished his knife at Mr. Gehm. Thus, we cannot conclude that Mr. West's aggravated robbery conviction is based on insufficient evidence.

{¶ 39} Mr. West also argues that once his aggravated robbery conviction is overturned the repeat violent offender specifications linked to that conviction also must be vacated. Because we are upholding his aggravated robbery conviction, however, we need not vacate his repeat violent offender specifications. Mr. West's second assignment of error is overruled.

*West*, 2015 WL 4464559, at *5-10.

West again essentially repeats here the argument he presented in state court: that the State did not establish the element of "fleeing immediately" from a theft offense, as required to prove aggravated robbery under Ohio law. Doc. 6-2, pp. 42-50. He claims "there had been a lapse of time and distant [*sic*] between the theft offense and the knife incident[,]" which "negates the aggravated robbery charge and the repeat violent offender specification in accordance with the Thomas [*sic*] decision." Doc. 1-2, p. 8-9.

A federal habeas court, however, must defer to, and is bound by, state-court rulings on state law. *See, e.g., Estelle*, 502 U.S. at 68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Moreover, to the extent West

challenges the state court's factual determination that the delay between the time Gehm first noticed that his briefcase was missing and the time West waved a knife at Gehm was "minimal," his claim also fails. The state court cited ample evidence to support its finding and reasonably determined that "viewing the evidence in a light most favorable to the State, a rational trial of fact could have concluded that the State set forth sufficient evidence that Mr. West was still in the process of fleeing immediately after a theft offense when he brandished his knife at Mr. Gehm." *West*, 2015 WL 4464559, at *9.

Based on the foregoing, the undersigned concludes that the state appellate court's decision rejecting West's claim of insufficiency of the evidence was neither contrary to, nor an unreasonable application of, *Jackson*. Accordingly, the undersigned recommends that the Court **DENY** Ground Two as meritless.

### 3. Ground Three should be DISMISSED

**Ground Three**: Whether the introduction of evidence of a suggestive and unreliable "show up" identification violated Petitioner's due process rights under the 14th Amendment, meriting reversal of his convictions.

West did not move to suppress or object to the admission of the identification in the trial court but presented the claim in his direct appeal. In reviewing the claim, the state court of appeals stated:

{¶ 45} In his fourth assignment of error, Mr. West argues that the trial court erred when it allowed the State to introduce evidence of a suggestive and unreliable show-up identification. He acknowledges that he did not move to suppress the identification before trial and failed to object to its admission at trial. Nevertheless, he asserts that the admission of the identification was plain error.

{¶ 46} Assuming that plain error applies to this situation, Mr. West has not shown that it was plain error for the court to allow the testimony about Mr. Gehm's out-of-court identification of Mr. West. *See State v. Reives–Bay*, 9th Dist. Summit No. 25138, 2011–Ohio–1778, ¶ 10 (reviewing similar argument for plain error, but noting Criminal Rule 12's mandate that such arguments be raised before trial). Under Criminal Rule 52(B), "a plain error or defect that affects a substantial right

may be noticed although it was not brought to the attention of the trial court." *State v. Horton*, 9th Dist. Summit No. 26407, 2013–Ohio–3902, ¶ 50. "A plain error must be obvious on the record, such that it should have been apparent to the trial court without objection." *Id.*, quoting *State v. Kobelka*, 9th Dist. Lorain No. 01CA007808, 2001 WL 1379440, *2 (Nov. 7, 2001). "As notice of plain error is to be taken with utmost caution and only to prevent a manifest miscarriage of justice, the decision of a trial court will not be reversed due to plain error unless the defendant has established that the outcome of the trial clearly would have been different but for the alleged error." *Horton* at ¶ 50.

{¶ 47} Even assuming that the show-up identification that occurred here was improper, Mr. West has not shown that the outcome of his trial would have been different, but for the admission of the testimony about the identification. *See State v. Beeler*, 9th Dist. Summit No. 27309, 2015–Ohio–275, ¶ 9. Mr. Gehm identified Mr. West in court as the person who stole his briefcase. He was able to follow Mr. West's footprints to the spot where he confronted him, and later directed the police to the same location. One officer was then able to continue following a footprint trail that led him to Mr. Gehm's briefcase. Additionally, upon his arrest, Mr. West was found to be in possession of a knife and Mr. Gehm's money.

{¶ 48} Mr. West has failed to establish that the outcome of his trial was affected by the admission of the testimony about the show-up identification that took place here. Accordingly, he has not shown that the court committed plain error by allowing that testimony. *See Beeler* at ¶ 9. Mr. West's fourth assignment of error is overruled.

*West*, 2015 WL 4464559, at *11.

Respondent argues this claim is procedurally defaulted based on Ohio's contemporaneous objection rule. Doc. 6, pp. 31-33. The undersigned agrees.

The state appellate court noted that West acknowledged he did not move to suppress the identification before trial or object to its admission at trial and then reviewed the claim only for plain error. *West*, 2015 WL 4464559, at *11. Ohio's contemporaneous objection rule requires that a party preserve an error for appeal by calling it to the attention of the trial court at a time when the error could have been avoided or corrected. *State v. Mason*, 82 Ohio St. 3d 144, 162 (Ohio 1998); *State v. Glaros*, 170 Ohio St. 471 (Ohio 1960), paragraph one of the syllabus. In "exceptional circumstances," however, Ohio courts may examine a claim that is otherwise

waived due to the violation of a procedural rule – such as the contemporaneous objection rule –
for "plain error," when "but for the error, the outcome of the trial clearly would have been
otherwise." *State v. Long*, 53 Ohio St. 2d 91, 96, 97 (Ohio 1978); *see also* Ohio R. Crim. P.
52(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not
brought to the attention of the court."). Failure to adhere to the "firmly-established"
contemporaneous objection rule is "an independent and adequate state ground" upon which to
find federal habeas claims procedurally defaulted. *See, e.g., Keith v. Mitchell*, 455 F.3d 662, 673
(6th Cir. 2006). And a court's "plain error review does not constitute a waiver of the state's
procedural default rules and resurrect the issue . . . ." *Id.*

West responds that this claim is not procedurally defaulted because the state court did not
provide a "clear and express" statement that it was resting its judgment on a state procedural bar
– here, the contemporaneous objection rule. Doc. 7, pp. 8-9. The Sixth Circuit has held,
however, that it "view[s] a state appellate court's review for plain error as the enforcement of a
procedural default." *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). *See also Gulertekin v.
Tinnelman-Cooper*, 340 F.3d 415, 422-23 (6th Cir. 2003) (finding claim procedurally defaulted
where trial court cited contemporaneous objection rule without expressly applying it, then
embarked on plain error review).

To overcome procedural default, a petitioner must show cause for the default and actual
prejudice that resulted from the alleged violation of federal law, or that there will be a
"fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750.
However, West has not argued or demonstrated that there is "cause and prejudice" to excuse his
procedural default nor has he demonstrated that a fundamental miscarriage of justice will occur if
his claim is not considered.

Based on the foregoing, the undersigned recommends that the Court **DISMISS** Ground Three on the basis that it is procedurally defaulted.[5]

### IV.    Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS in part and DENY in part** West's Petition (Doc. 1), because the Petition presents claims that lack merit, are not cognizable on federal habeas review, and/or are procedurally defaulted.

Dated: April 19, 2017

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[5]  Even if Ground Three were not procedurally defaulted, the undersigned would recommend that it be dismissed because it is not cognizable on federal habeas review.  "[A]lleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review[,]" *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012), unless they are "so egregious that [they] result[]in a denial of fundamental fairness[,]" *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  As the state appellate court concluded, even assuming the trial court erred by permitting the State to introduce evidence of the show-up identification, West cannot demonstrate that this evidence rendered his trial fundamentally unfair given the overwhelming weight of the State's other evidence of his guilt.